IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEMETRIUS DANIEL,<br><br>    Petitioner,<br><br>v.<br><br>ROBERT L. AYERS, JR.,<br><br>    Respondent. | No. C 08-03221 SBA (PR)<br><br>**ORDER DENYING PETITION FOR<br>WRIT OF HABEAS CORPUS** |

## INTRODUCTION

Petitioner Demetrius Daniel, an inmate at San Quentin State Prison, filed this pro se petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, in which he challenges the denial of parole by the California Board of Parole Hearings (BPH) in 2007. The matter is now submitted for the Court's consideration of the merits of the petition. For the reasons discussed below, the petition is DENIED.

## PROCEDURAL BACKGROUND

In 1988, Petitioner was convicted by a jury in Los Angeles County Superior Court of second-degree murder. (Pet. at 2.) The trial court sentenced him to a state prison term of fifteen years to life. (Pet. Ex. A at 3.) On March 5, 2007, the BPH conducted a parole consideration hearing, after which it found that Petitioner was not suitable for parole because he would pose an unreasonable risk of danger to society or a threat to public safety if released from prison. (Id. at 130.)

Petitioner filed a habeas petition in the Los Angeles County Superior Court, which was denied on October 29, 2007. (Pet. Ex. D.) Thereafter, Petitioner filed a habeas petition in the state appellate court, which was summarily denied on March 26, 2008. (Resp't Ex. 1.) Petitioner then filed a petition for review in the state supreme court, which was summarily denied on June 11, 2008. (Pet. Ex. E.)

Petitioner filed the instant petition on July 3, 2008. Petitioner claims that the BPH violated his right to due process by denying parole without "some evidence" that he poses a current threat to

society, the denial of parole violated his right to due process because it was "arbitrary and capricious," parole was denied pursuant to a "no-parole policy" implemented by the Governor and the BPH, and the state court's rejection of his claims was based upon an unreasonable determination of the law and facts.  Respondent's motion to dismiss the petition as moot was denied, and the Court ordered Respondent to show cause why the petition should not be granted based on Petitioner's claims.  Respondent has filed an answer, along with a supporting memorandum and exhibits, and Petitioner has filed a traverse.

**STANDARD OF REVIEW**

**I.     AEDPA**

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a district court may grant a petition challenging a state conviction or sentence on the basis of a claim that was "adjudicated on the merits" in state court only if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  Section 2254(d) applies to a habeas petition from a state prisoner challenging the denial of parole.  See Sass v. Cal. Bd. of Prison Terms, 461 F.3d 1123, 1126-27 (9th Cir. 2006).

A state court has "adjudicated" a petitioner's constitutional claim "on the merits" for purposes of § 2254(d) when it has decided the petitioner's right to post-conviction relief on the basis of the substance of the constitutional claim advanced, rather than denying the claim on the basis of a procedural or other rule precluding state court review on the merits.  Lambert v. Blodgett, 393 F.3d 943, 969 (9th Cir. 2004).  It is error for a federal court to review de novo a claim that was adjudicated on the merits in state court.  See Price v. Vincent, 538 U.S. 634, 638-43 (2003).

**A.     Section 2254(d)(1)**

Challenges to purely legal questions resolved by the state court are reviewed under § 2254(d)(1), under which a state prisoner may obtain habeas relief with respect to a claim

adjudicated on the merits in state court only if the state court adjudication resulted in a decision that was "contrary to" or "involved an unreasonable application of" "clearly established Federal law, as determined by the Supreme Court of the United States." Williams (Terry) v. Taylor, 529 U.S. 362, 402-04, 409 (2000).  While the "contrary to" and "unreasonable application" clauses have independent meaning, see id. at 404-05, they often overlap, which may necessitate examining a petitioner's allegations against both standards.  See Van Tran v. Lindsey, 212 F.3d 1143, 1149-50 (9th Cir. 2000), overruled on other grounds; Lockyer v. Andrade, 538 U.S. 63, 70-73 (2003).

### 1.  Clearly Established Federal Law

"Clearly established federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412.  "Section 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." Id.  "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme] Court is, at best, ambiguous." Mitchell v. Esparza, 540 U.S. 12, 17 (2003).  If there is no Supreme Court precedent that controls on the legal issue raised by a petitioner in state court, the state court's decision cannot be contrary to, or an unreasonable application of, clearly-established federal law.  See, e.g., Stevenson v. Lewis, 384 F.3d 1069, 1071 (9th Cir. 2004).

The fact that Supreme Court law sets forth a fact-intensive inquiry to determine whether constitutional rights were violated "obviates neither the clarity of the rule nor the extent to which the rule must be seen as 'established'" by the Supreme Court. Williams, 529 U.S. at 391.  There are, however, areas in which the Supreme Court has not established a clear or consistent path for courts to follow in determining whether a particular event violates a constitutional right; in such an area, it may be that only the general principle can be regarded as "clearly established." Andrade, 538 U.S. at 64-65.  When only the general principle is clearly established, it is the only law amenable to the "contrary to" or "unreasonable application of" framework.  See id. at 73.

Circuit decisions may still be relevant as persuasive authority to determine whether a particular state court holding is an "unreasonable application" of Supreme Court precedent or to

3

assess what law is "clearly established." Clark v. Murphy, 331 F.3d 1062, 1070-71 (9th Cir.), cert. denied, 540 U.S. 968 (2003); Duhaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 1999).

### 2.     "Contrary to"

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. A "run-of-the-mill state-court decision" that correctly identifies the controlling Supreme Court framework and applies it to the facts of a prisoner's case "would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." Id. at 406. Such a case should be analyzed under the "unreasonable application" prong of § 2254(d). See Weighall v. Middle, 215 F.3d 1058, 1062 (9th Cir. 2000).

### 3.     "Unreasonable Application"

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411; accord Middleton v. McNeil, 541 U.S. 433, 436 (2004) (per curiam) (challenge to state court's application of governing federal law must be not only erroneous, but objectively unreasonable); Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (per curiam) ("unreasonable" application of law is not equivalent to "incorrect" application of law).

Evaluating whether a rule application was unreasonable requires considering the relevant rule's specificity; if a legal rule is specific, the range of reasonable judgment may be narrow; if it is more general, the state courts have more leeway. Yarborough v. Alvarado, 541 U.S. 652, 664 (2004). Whether the state court's decision was unreasonable must be assessed in light of the record that court had before it. Holland v. Jackson, 542 U.S. 649, 651 (2004) (per curiam).

The "objectively unreasonable" standard is not a clear error standard.  Andrade, 538 U.S. at 75-76 (rejecting Van Tran's use of "clear error" standard); Clark, 331 F.3d at 1067-69 (acknowledging the overruling of Van Tran on this point).  After Andrade, "[t]he writ may not issue simply because, in our determination, a state court's application of federal law was erroneous, clearly or otherwise.  While the 'objectively unreasonable' standard is not self-explanatory, at a minimum it denotes a greater degree of deference to the state courts than [the Ninth Circuit] ha[s] previously afforded them." Id.  In examining whether the state court decision was unreasonable, the inquiry may require analysis of the state court's method as well as its result.  Nunes v. Mueller, 350 F.3d 1045, 1054 (9th Cir. 2003).

**B.     Section 2254(d)(2)**

A federal habeas court may grant the writ if it concludes that the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  An unreasonable determination of the facts occurs where the state court fails to consider and weigh highly probative, relevant evidence, central to the petitioner's claim, that was properly presented and made part of the state court record.  Taylor v. Maddox, 366 F.3d 992, 1005 (9th Cir. 2004).  A district court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

**II.    California Law Governing Parole for Murderers**

A BPH panel meets with an inmate one year before the prisoner's minimum eligible release date "and shall normally set a parole release date . . . .  The release date shall be set in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public, and that will comply with the sentencing rules that the Judicial Council may issue and any sentencing information relevant to the setting of parole release dates."  Cal. Pen. Code § 3041(a).  Significantly, that statute also provides:  The panel shall set a release date,

> unless it determines that the gravity of the current convicted offense or offenses,

> or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting.

Id. § 3041(b).

One of the implementing regulations, Title 15 of the California Code of Regulations, section 2401 provides: "A parole date shall be denied if the prisoner is found unsuitable for parole under Section 2402(c). A parole date shall be set if the prisoner is found suitable for parole under Section 2402(d). A parole date set under this article shall be set in a manner that provides uniform terms for offenses of similar gravity and magnitude with respect to the threat to the public." The regulation also provides that "[t]he panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." 15 Cal. Code Regs. § 2402(a).

In making its determination, the parole board may consider "[a]ll relevant, reliable information available," including,

> the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in finding of unsuitability.

Id. § 2402(b).

Circumstances tending to show unsuitability for parole include the nature of the commitment offense, and consideration of whether "[t]he prisoner committed the offense in an especially heinous, atrocious or cruel manner." Id. § 2281(c). This includes consideration of the number of victims, whether "[t]he offense was carried out in a dispassionate and calculated manner," whether the victim was "abused, defiled or mutilated during or after the offense," whether "[t]he offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering," and

whether "[t]he motive for the crime is inexplicable or very trivial in relation to the offense." <u>Id.</u> Other circumstances tending to show unsuitability for parole are a previous record of violence, an unstable social history, previous sadistic sexual offenses, a history of severe mental health problems related to the offense, and serious misconduct in prison or jail. <u>See id.</u>

Circumstances tending to support a finding of suitability for parole include no juvenile record, a stable social history, signs of remorse, that the crime was committed as a result of significant stress in the prisoner's life, a lack of criminal history, a reduced possibility of recidivism due to the prisoner's present age, that the prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release, and that the prisoner's institutional activities indicate an enhanced ability to function within the law upon release. <u>See id.</u> § 2281(d).

The regulations also contain a matrix of suggested base terms that prisoners with indeterminate sentences should serve before they are released on parole. The matrix provides three choices of suggested "base terms" for several categories of crimes. <u>See</u> 15 Cal. Code Regs. § 2403. If, as in Petitioner's case, the base offense is one count of first-degree murder with the use of a dangerous weapon (firearm), the matrix of base terms ranges from a low of 29-31 years, to a high of 30-32 years, depending on some of the facts of the crime.[1] <u>See id.</u> § 2403(b). Although the matrix is to be used to establish a base term, this occurs only once the prisoner has been found suitable for parole. <u>See id.</u> § 2403(a).

The statutory scheme places individual suitability for parole above a prisoner's expectancy in early setting of a fixed date designed to ensure term uniformity. <u>In re Dannenberg</u>, 34 Cal.4th 1061, 1070-71 (2005).

---

[1] One axis of the matrix concerns the relationship between murderer and victim and the other axis of the matrix concerns the circumstances of the murder. The choices on the axis for the relationship of murderer and victim are "participating victim," "prior relationship," "no prior relationship," and "threat to public order or murder for hire." The choices on the axis for the circumstances of the murder are "indirect," "direct or victim contribution," "severe trauma," or "torture." Each of the choices are further defined in the matrix. <u>See</u> CAL. CODE REGS. tit. 15, § 2403(b).

> While subdivision (a) of section 3041 states that indeterminate life (i.e., life-maximum) sentences should "normally" receive "uniform" parole dates for similar crimes, subdivision (b) provides that this policy applies "*unless* [the Board] determines" that a release date cannot presently be set because the particular offender's crime and/or criminal history raise "*public safety*" concerns requiring further indefinite incarceration. (Italics added.)  Nothing in the statute states or suggests that the Board must evaluate the case under standards of term uniformity before exercising its authority to deny a parole date on the grounds the particular offender's criminality presents a *continuing public danger*.

Id. at 1070 (emphasis, brackets and parenthesis in original).  Indeed, the very regulation that includes the matrix states that "[t]he panel shall set a base term for each life prisoner who is found suitable for parole." 15 Cal. Code Regs. § 2403(a) (emphasis added).  "[T]he Board, exercising its traditional broad discretion, may protect public safety in each discrete case by considering the dangerous implications of a life-maximum prisoner's crime individually." Dannenberg, 34 Cal. 4th at 1071 (emphasis added).

The California Supreme Court's determination of state law is binding in this federal habeas action.  See Hicks v. Feiock, 485 U.S. 624, 629 (1988).

## DISCUSSION

### I.     Petitioner's Claims

Petitioner makes the following claims in his petition: (1) that the BPH violated his right to due process by denying parole without "some evidence" that he poses a current threat to society; (2) the denial of parole violated his right to due process because it was "arbitrary and capricious;" (3) the denial of parole violated his right to due process because it was based on a "no-parole policy" implemented by the Governor and the BPH; and (4) the state superior court's rejection of his claims was based upon an unreasonable determination of the law and facts.  The last of these claims sets forth the applicable standard of review under AEDPA, which will be applied to Petitioner's other claims, but it does not state an independent grounds for habeas relief.

### II.    Due Process

The Due Process Clause of the federal constitution protects an inmate's "liberty interest" in parole.  Sass v. Cal. Bd. of Prison Terms, 461 F.3d 1123, 1125 (9th Cir. 2006). "In analyzing the procedural safeguards owed to an inmate under the Due Process clause, [a court] must look at two

8

distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural safeguards." Biggs v. Terhune, 334 F.3d 910, 913 (9th Cir. 2003). The second prong of this test is satisfied if (1) the inmate has been afforded an opportunity to be heard and, if denied parole, informed of the reasons underlying the decision and (2) "some evidence" supports the decision to grant or deny parole. See Sass, 461 F.3d at 1129 (adopting some evidence standard for disciplinary hearings outlined in Superintendent v. Hill, 472 U.S. 445, 454-55 (1985)).

### A. Protected Liberty Interest

Respondent argues as an initial matter that Petitioner has no federally protected liberty interest in parole. This argument has been rejected by the Ninth Circuit. See Sass, 461 F.3d at 1125 ("California inmates continue to have a liberty interest in parole after In re Dannenberg."). Thus, under Sass, Petitioner was entitled to the protections of due process at his 2007 parole suitability hearing.

### B. Opportunity to Be Heard and Reasons for Denial

There is no dispute that Petitioner fully participated in his 2007 parole suitability hearing, as evidenced by the transcript of that hearing. (Pet. Ex. A.) Throughout the hearing, Petitioner was given the opportunity to make comments and/or objections in response to the BPH's statements, clarify any misunderstandings and provide statements regarding his parole eligibility. (Id.) In addition, the BPH laid out detailed reasons for denying Petitioner parole, which are discussed further below. (Id.) Consequently, the record is clear that the BPH did not violate Petitioner's due process right to have an opportunity to be heard and to be given the reasons for the denial of parole.

### C. "Some Evidence"

A parole board's decision satisfies the requirements of due process if "some evidence" supports the decision. Sass, 461 F.3d at 1128-29. "To determine whether the some evidence standard is met 'does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached'" by the parole board. Id. at 1128 (quoting Hill, 472 U.S. at 455-56). The "some evidence standard is minimal, and assures that

9

'the record is not so devoid of evidence that the findings of the . . . board were without support or otherwise arbitrary.'" Id. at 1129 (quoting Hill, 472 U.S. at 457).

It is now established under California law that the task of the BPH is to determine whether the prisoner would be a danger to society if he or she were paroled. In. re Lawrence, 44 Cal. 4th 1181 (2008). The constitutional "some evidence" requirement therefore is that there be some evidence that the prisoner would be such a danger, not that there be some evidence of one or more of the factors that the regulations list as factors to be considered in deciding whether to grant parole. Id. at 1205-06.

In several cases the Ninth Circuit has discussed whether the "some evidence" standard can be satisfied by evidence of the nature of the commitment offense and prior offenses. In Biggs, the court explained that the some evidence standard may be considered in light of the BPH's decisions over time. The court reasoned that "[t]he Parole Board's decision is one of 'equity' and requires a careful balancing and assessment of the factors considered . . . A continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." 334 F.3d at 915-17. Although the Biggs court upheld the initial denial of a parole release date based solely on the nature of the crime and the prisoner's conduct before incarceration, the court cautioned that "[o]ver time, however, should Biggs continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of his offense would raise serious questions involving his liberty interest." Id. at 916.

The Sass court criticized the decision in Biggs: "Under AEDPA it is not our function to speculate about how future parole hearings could proceed." Sass, 461 F.3d at 1129. Sass determined that it is not a due process violation per se if the Board determines parole suitability based solely on the unchanging factors of the commitment offense and prior offenses. Id. (prisoner's commitment offenses in combination with prior offenses amounted to some evidence to support the Board's denial of parole). However, Sass does not dispute the argument in Biggs that, over time, a commitment offense may be less probative of a prisoner's current threat to the public safety.

The Ninth Circuit explained that all of the cases in which it previously held that denying parole based solely on the commitment offense comported with due process were ones in which the prisoner had not yet served the minimum years required by the sentence. Id.  Also, noting that the parole board in Sass and Irons appeared to give little or no weight to evidence of the prisoner's rehabilitation, the Ninth Circuit stressed its hope that "the Board will come to recognize that in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from relevant California statutes." Id. (citing Biggs, 334 F.3d at 917).  Even so, the Ninth Circuit has not set a standard as to when a complete reliance on unchanging circumstances would amount to a due process violation.

In denying parole in this case, the BPH cited the cruel and callous nature of the commitment offense, its trivial motive, Petitioner's prior criminal record, and his insufficient parole plans. (Pet. Ex. A at 130-38.)  These are factors that "tend to indicate unsuitability for parole" under California regulations. 15 Cal. Code Regs. § 2402.  The facts of the commitment offense as described in the probation report were as follows:

> Defendant and co-defendants participated in the fatal shooting of 26-year-old Kenneth Day.  On the present offense date, defendant and co-defendant decided to commit some robberies.  Defendant was the driver of the motor vehicle with co-defendant's passengers.
> Defendant and co-defendants went to the Paramount area and then drove to the Compton area where they observed victim Kenneth Day driving his 1980 Chevrolet El Camino.  They followed his vehicle to a gas station.  After victim Day parked his vehicle and was pouring water into his radiator, codefendant Eaves, E-A-V-E-S, walked up to the victim and shot him in the head.
> Co-defendants then jumped into the victim's vehicle and both vehicles fled the scene.  Defendant and companions met later to strip the vehicle's (sic) car.  The vehicle was also burned.

(Id. at 12-13.)  At the parole hearing, Petitioner agreed with this account, and he added that he did not actually see the shooting, although he was at the gas station and heard it. (Id. at 13-14.)

There are a number of factors to be considered in assessing whether the BPH's decision was supported by "some evidence" that Petitioner would present an unreasonable danger to the public if released.  Of great importance is that nineteen years had passed since he carried out the commitment

offense. In addition, the BPH commended Petitioner for a relatively small disciplinary record, a generally positive psychological evaluation, his positive programming, and his vocational skills. (Id. at 134-36.) While the BPH recommended to Petitioner to firm up his parole plans, he was commended for having some plans for residence and employment upon release. (Id. at 134-38.)

On the other hand, the crime, as the BPH reasonably found, was carried out in a "very cruel, very cold and callous" and "very calculated" manner. (Id. at 130-31.) Petitioner planned with his cohorts to steal a car at gun point, and he drove to the scene of the crime where his co-defendant approached an unarmed man and without provocation or hesitation shot him in the head at close range. (Id.) After the shooting, Petitioner did not attempt to help the victim or to see if he was alive, but instead ran away immediately. (Id. at 131.) Moreover, the motive for the crime – to make money from the sale of auto parts – was exceedingly trivial compared to the gravity of the murder. In addition to the circumstances of the commitment offense, the BPH correctly noted that Petitioner's criminal history demonstrated an escalating pattern of criminality insofar as he initially had involvement in drug-related offenses, then embezzlement, before turning to carjacking that led to the murder in this case. (Id. at 132-33.) Petitioner's past association with gang members also evinced an unstable social history. (Id. at 132.)

The issue for the instant federal petition is whether the state courts' rejection of petitioner's due process claim was contrary to, or an unreasonable application of, clearly-established Supreme Court authority. *See* 28 U.S.C. 2254(d)(1). It is true that the crime had been committed approximately nineteen years earlier and that Petitioner was approximately four years beyond his minimum term at the time of the parole hearing. As expressed in Biggs, after passage of enough time such a factor ceases to amount to "some evidence" on its own. While it was perhaps a close question as to whether enough time had passed in this case given the particularly egregious circumstances surrounding the murder, whether the BPH's decision was supported by "some evidence" is not a close call when the additional layer of deference in the "unreasonable application" standard is added. Indeed, when the constitutionality of the underlying decision is a close question, it is almost a foregone conclusion that it was reasonable for the state courts to hold that it was not

unconstitutional. That is the case here. The state courts' rejection of the "some evidence" claim was not contrary to, nor an unreasonable application of, clearly established Supreme Court authority.

Petitioner argues that the denial of parole was arbitrary and capricious because the BPH had granted parole in 2005, which decision was later reversed by the Governor, and there was no new evidence of his dangerousness to the public since the 2005 hearing. The due process inquiry into the basis for denying parole is limited to whether there was "some evidence" to support the decision, however. That the BPH exercised its discretion to grant parole in 2005 does not mean that there was not "some evidence" to support the opposite conclusion. Even if Petitioner's claim is true that no new evidence of Petitioner's risk of endangering the public had arisen since the 2005 hearing, for the reasons discussed above, it was nonetheless reasonable for the state court to find that there was "some evidence" to deny parole at the 2007 hearing. Accordingly, the state court's rejection of this claim was not contrary to or an unreasonable application of federal law.

### D. "No-Parole Policy"

Petitioner contends that his due process rights were violated by the BPH's denial of parole based on a "no parole "policy for prisoners serving life sentences. The record shows that the BPH reviewed the evidence extensively and discussed it in detail with Petitioner and his attorney. (Id. at 12-138.) The BPH's decision sets out facts specific to Petitioner upon which it relied in finding him not suitable for parole. (Id. at 130-38.) Both of these factors tend to negate the accusation that the parole was denied pursuant to a no-parole policy as opposed to the specific facts of Petitioner's case indicating unsuitability, and Petitioner has not provided any evidence that would show otherwise. Indeed, the fact that the BPH found Petitioner suitable for parole in 2005 and 2009 tends to undermine his claim that the BPH denied parole in 2007 because of a policy of denying parole to life prisoners. The state courts' rejection of this claim was not contrary to, nor an unreasonable application of, clearly-established Supreme Court authority.

### III. Certificate of Appealability

The federal rules governing habeas cases brought by state prisoners have recently been amended to require a district court that denies a habeas petition to grant or deny a certificate of

appealability (COA) in its ruling.  See Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (effective December 1, 2009).  However, the Ninth Circuit has made clear that a state prisoner challenging the BPT's administrative decision to deny a request for parole need not obtain a certificate of appealability.  See Rosas v. Nielsen, 428 F.3d 1229, 1232 (9th Cir. 2005).  Accordingly, any request for a COA is DENIED as unnecessary.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.  In addition, any request for a COA is DENIED as unnecessary.  The Clerk of the Court shall enter judgment in accordance with this Order, terminate all pending motions, and close the file.

IT IS SO ORDERED.

DATED: 3/16/10

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

DEMETRIUS DANIEL,

       Plaintiff,

  v.

ROBERT L. AYERS JR. et al,

       Defendant.

Case Number: CV08-03221 SBA

**CERTIFICATE OF SERVICE**

1  I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

2

3  That on March 18, 2010, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

4

Demetrius Daniel E-03098
San Quentin State Prison
San Quentin, CA 94964

Dated: March 18, 2010

Richard W. Wieking, Clerk
By: LISA R CLARK, Deputy Clerk

P:\PRO-SE\SBA\HC.08\Daniel3221.denyHC.wpd            15